COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Frank and Clements
Argued at Alexandria, Virginia


SAMUEL MARCELLUS ESSER
                                          OPINION BY
v.    Record No. 2327-00-4    CHIEF JUDGE JOHANNA L. FITZPATRICK
                                          JULY 30, 2002
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF FREDERICK COUNTY
                Arthur W. Sinclair, Judge Designate

            E. Eugene Gunter for appellant.

            Donald E. Jeffrey, III, Assistant Attorney
            General (Randolph A. Beales, Attorney
            General, on brief), for appellee.


     Samuel Marcellus Esser (appellant) was convicted in a jury

trial of rape in violation of Code § 18.2-61, one count each of

cunnilingus, fellatio, and forcible sodomy in violation of

Code § 18.2-67.1, one count of penetration of the labia majora,

and one count of penetration of the anus in violation of

Code § 18.2-67.2.  The sole issue on appeal is whether the trial

court erred in allowing, under the excited utterance exception

to the hearsay rule, the mother of the victim to testify about

the details of the rape and sexual assaults as related to her by

the victim.  For the following reasons, we affirm appellant's

convictions.

## I.  BACKGROUND

Under familiar principles of appellate review, we examine the evidence in the light most favorable to the Commonwealth, the prevailing party below, granting to it all reasonable inferences fairly deducible therefrom.  See Juares v. Commonwealth, 26 Va. App. 154, 156, 493 S.E.2d 677, 678 (1997).

So viewed, the evidence established that at the time of the sexual assaults, A.M., the victim, was nineteen years old, 4' 6" tall, and weighed approximately sixty-five pounds.  She suffered from atactic cerebral palsy, retinal dystrophy, speech impediments, a learning disability and was unable to walk without assistance.

On March 22, 1999, the victim was at the trailer home of her aunt, Bonnie Miller (Miller).  Miller and her daughter left the trailer for approximately thirty minutes while A.M. remained with appellant, Miller's live-in boyfriend.  When they were alone in the trailer, appellant grabbed the victim's legs and laid her on a couch.  Appellant removed his underwear, undressed A.M., then raped and sexually assaulted her.  Appellant redressed A.M. when he heard Miller's car in the driveway.  A.M. said nothing to her aunt because "[she] was scared . . . [appellant] said don't tell your mom or Bonnie or you'll regret it."  She remained at the trailer for an hour and one-half until her mother arrived to take her home.

A.M. said nothing about the events at her aunt's trailer until the morning of March 24, 1999, two days after the sexual assaults occurred. When A.M.'s mother told her that she was going to work, A.M. began to "cry hysterically because she was afraid [her mother] was going to put her back in the same environment." A.M. told her mother that she might be pregnant and her mother said, "Honey, I thought you told me that you have never done anything, you know, with any guys." A.M. said "Mommy, my uncle Sam raped me." She then described the details of the rape and sexual assaults.

At trial, appellant objected to the admissibility of the mother's testimony, which included details of the assaults as described by her daughter, as both hearsay and repetitive testimony. The Commonwealth argued that the statements were admissible under the excited utterance exception to the hearsay rule.[1] The trial court overruled the objection and stated that,

---

[1] The Commonwealth argues that appellant failed to preserve this issue pursuant to Rule 5A:18. However, the record establishes that appellant objected to the mother's testimony as both hearsay and repetitive. In response, the Commonwealth's attorney argued that "it would be hearsay evidence, but it is a clear exception to the hearsay [sic] excited utterance exception to the hearsay rule." Thus, the trial judge had the opportunity to consider the specific argument made and rule on that basis. "The purpose of the rule is to ensure that the trial court and opposing party are given the opportunity to intelligently address, examine, and resolve issues in the trial court, thus avoiding unnecessary appeals." Andrews v. Commonwealth, 37 Va. App. 479, 493, 559 S.E.2d 401, 408 (2002) (citing Lee v. Lee, 12 Va. App. 512, 514, 404 S.E.2d 736, 737 (1991) (en banc)).

"[u]nder all the circumstances so far as they exist at this point, it would be admissible." Appellant renewed his objection during the mother's testimony on the ground that "[A.M.] has already testified in that regard, directly." The trial court overruled the objection.

## II. EXCITED UTTERANCE ANALYSIS

> There is no fixed rule by which the question whether the statement is admissible as an excited utterance can be decided. Resolution of the issue depends on the circumstances of each case and "rests within the sound judicial discretion and judgment of the trial court." That discretion and judgment, of course, is subject to review. Nonetheless, in a doubtful case there "is a presumption in favor of the action" of the trial court.

Clark v. Commonwealth, 235 Va. 287, 292, 367 S.E.2d 483, 486 (1988) (quoting Huffman v. Commonwealth, 168 Va. 668, 681, 190 S.E. 265, 271 (1937)).

Appellant contends that A.M.'s statements to her mother were inadmissible hearsay and were improperly admitted under the excited utterance exception. He argues that the "startling event" necessary to give rise to the exception was the sexual assault which occurred two days earlier and, thus, this time lapse negated the existence of spontaneity required for application of the exception. We disagree with this contention. The startling event which precipitated the excited utterance occurred when A.M. was told by her mother that she was required

- 4 -

to return to work and A.M. was to be returned to the place where the assaults occurred and the possible control of her attacker. A.M.'s statements were made immediately thereafter.

As a general rule, hearsay evidence is incompetent and inadmissible, and "[t]he party seeking to rely upon an exception to the hearsay rule has the burden of establishing admissibility." Neal v. Commonwealth, 15 Va. App. 416, 420-21, 425 S.E.2d 521, 524 (1992) (citing Doe v. Thomas, 227 Va. 466, 472, 318 S.E.2d 382, 386 (1984)).

> A statement comes within the excited utterance exception to the hearsay rule and is admissible to prove the truth of the matter stated, when the statement is spontaneous and impulsive, thus guaranteeing its reliability. "There is no fixed rule by which the question whether the statement is admissible as an excited utterance can be decided. Resolution of the issue depends upon the circumstances of each case." The statement must be prompted by a startling event and be made at such time and under such circumstances as to preclude the presumption that it was made as the result of deliberation. In addition, the declarant must have firsthand knowledge of the startling event. The decision whether the statement qualifies as an excited utterance lies within the discretion of the trial court.

Braxton v. Commonwealth, 26 Va. App. 176, 184, 493 S.E.2d 688, 691 (1997) (quoting Goins v. Commonwealth, 251 Va. 442, 460, 470 S.E.2d 114, 126 (1996)). "Whether a hearsay statement is an excited utterance is not determined solely by the lapse of time

between the 'startling event' and the declaration." Id. (citing
Doe, 227 Va. at 471-72, 318 S.E.2d at 385).

Appellant's contention that the startling event had to be
the crime, itself, is without merit.  The basis of the excited
utterance exception rests with the spontaneity and impulsiveness
of the statement; thus, the startling event does not have to be
the actual crime itself, but rather may be a related occurrence
that causes such a reaction.

Analyzing an excited utterance generated by a startling
event that occurred later than the actual crime, the Maryland
Court of Special Appeals stated:

> The relationship between the subsequent
> startling event, the excited utterance
> generated by it, the prior event about which
> the statement comments, and the time between
> both startling events and the statement are
> all relevant, especially in regard to
> whether the utterance is made without
> reflection.  We see no reason, however,
> given the rationale for the excited
> utterance exception in the first instance,
> why a subsequent related startling event
> cannot be the startling event that produces
> an excited utterance about a prior event or
> why that excited utterance cannot be
> considered for admission under the excited
> utterance exception to the hearsay rule.
> The trial court, of course, would still have
> to consider all elements, including the
> passage of time and opportunity for
> fabrication or excuse, in resolving the
> issue of spontaneity in order ultimately to
> rule on admissibility.

Bayne v. State, 632 A.2d 476, 489 (Md. Ct. Spec. App. 1993).

We agree with this analysis.  See Pugh v. Commonwealth, 223 Va. 663, 669, 292 S.E.2d 339, 342 (1982) (holding that the father's statement, "Oh, no, not again," when told about the death of his child, was admissible under the excited utterance exception to the hearsay rule because the statement was prompted by the announcement of the unexpected death of his child); see also Tennessee v. Gordon, 952 S.W.2d 817, 821 (Tenn. 1997) (holding that the startling event was not the rape itself, but pain suffered while urinating following the rape, even though the victim identified the defendant two minutes after the startling event; her statement qualified as an excited utterance because the stress of the event had not diminished and the time was short); United States v. Napier, 518 F.2d 316, 318 (9th Cir. 1975) (holding that when an assault victim who had been hospitalized for seven weeks after the assault returned home and saw a picture of the defendant, her statement "he killed me" was an excited utterance because the display of the photograph was a sufficiently startling event); and In re Troy P., 842 P.2d 742, 747 (N.M. Ct. App. 1992) (holding that a four-year-old victim's mother properly testified to statements made by her daughter upon learning she was to be returned to her father's custody where she had been assaulted by a babysitter's son several weeks earlier; "spontaneous utterances made well after the event [may

be admissible] when the declarant was suddenly subjected to rekindled excitement").

We hold that the facts of the instant case support the trial court's finding that A.M.'s statement describing the events to her mother was an excited utterance and sufficiently trustworthy to justify its admission into evidence.  The statement was made the first time she believed she was to be returned to the place where she was assaulted and to the control of appellant, the man who had raped and sexually assaulted her.  Her physical condition made her unable to protect herself from any future assaults.  We cannot say, upon this record, that the trial court abused its discretion by ruling that the victim's statement, as related by her mother, was admissible as an excited utterance.

Affirmed.
