**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 25 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

JASON LOSSIAH,

     Defendant-Appellant.

No. 04-2068

(D.C. No. CR-00-171 MV)
(D. N. M.)

**ORDER AND JUDGMENT** [*]

Before **BRISCOE, HOLLOWAY** and **MURPHY** , Circuit Judges.

Defendant Jason Lossiah appeals his convictions for two counts of aggravated sexual abuse in violation of 18 U.S.C. §§ 1153, 2241(c), 2246(2)(A). Lossiah contends hearsay evidence was improperly admitted, the evidence submitted was insufficient to support his convictions, and the jury's verdicts are irrationally inconsistent.[1] We have jurisdiction pursuant to 28 U.S.C. § 1291 and

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[1] Although the United States initially filed a cross-appeal (No. 04-2100)

(continued...)

affirm.

I.

In January of 2002, Lossiah was charged in a superceding indictment with six counts of aggravated sexual abuse in violation of 18 U.S.C. §§ 2241(c) and 2246(2), subsections (A), (B), and (D). Three counts involved a child who was over the age of 12 but under the age of 16, and three counts involved her younger sister, who was under the age of 12. Lossiah was convicted after a jury trial on four counts and acquitted of two. Lossiah's motion for a new trial was granted. A second trial, which began in June of 2003, ended in a mistrial.

The third trial, which gives rise to this appeal, began in August 2003. The jury returned guilty verdicts on Counts I and II, both involving the older child, and acquitted on Count III, involving the older child, and Count IV, the only remaining count involving her younger sister.[2]

The children, who were the victims of the crimes charged, lived at the school they attended on their reservation. With their mother's permission,

[1](...continued)
challenging the court's grant of a downward departure, it later moved to dismiss the cross-appeal. The government's motion to dismiss its cross-appeal was granted by the court on January 27, 2005.

[2] Lossiah was convicted of Counts I and II for forcing the older child to engage in sexual acts in violation of 18 U.S.C. §§ 1153, 2241(c), 2246(2)(A). Lossiah was acquitted of Count III, which charged a violation of 18 U.S.C. §§ 1153, 2241(c), 2246(2)(B), and of Count IV, which charged a violation 18 U.S.C. §§ 1153, 2241(c), 2246(2)(D).

2

Lossiah and other members of his family would bring the children snacks at school or check them out from school to take them to a nearby store so that they could select their own snacks. On December 19, 2000, Lossiah checked the older child out of school. Although he told her they were going to get a snack, he instead sexually assaulted her. This sexual assault of the older child is the basis for the convictions appealed.

The evidence at trial also related to alleged sexual abuse of the younger child, and the testimony of Kelly Smith, her third grade teacher, is the focus of Lossiah's argument that hearsay evidence was improperly admitted. Specifically, the same day that the older child was assaulted, her younger sister upon seeing Lossiah in the school office ran to Smith and asked Smith not to let Lossiah take her from school because he had raped her. The younger sister made this statement to Smith on December 19. The Government contends Lossiah sexually assaulted the younger sister sometime before Thanksgiving, suggesting October 19 as the exact date. A few days after December 19, Dr. Margaret Bradley examined both of the children.

## II.

### Excited utterance

Lossiah contends the court erred in admitting the following statement as an excited utterance: "Don't let him check me out. He raped me." ROA, Vol. XIV,

at 213.  Smith testified the younger sister made this statement to her.  Lossiah argues that (1) the younger sister was not immediately excited after a startling event, (2) there is no evidence that a startling event occurred, and (3) the statement does not relate to a startling event.  The district court admitted the statement as an excited utterance, but did not indicate what startling event prompted the statement.  Id. at 204-213.  Lossiah objected to the admission of the statement as constituting hearsay.  Id. at 204.

An excited utterance, "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition," is excluded from the definition of hearsay under Federal Rule of Evidence 803(2).  We review "evidentiary rulings under an abuse of discretion standard and reverse[s] district court rulings only for a clearly erroneous finding of fact or an erroneous conclusion of law or  . . . a clear error in judgment."  United States v. Lang, 364 F.3d 1210, 1222 (10th Cir. 2004).

Lossiah contends that the statement was not an excited utterance because the younger child initially appeared calm following the startling event.  This argument understates the test.  To come within the excited utterance exception, the declarant need not show signs of excitement immediately upon witnessing or experiencing a startling event.  Rather, the declarant is simply required to still be under the continuing stress of excitement caused by the event or condition when

4

making the statement.  See United States v. Farley, 992 F.2d 1122, 1126 (10th Cir. 1993).

Lossiah also contends the court's ruling was erroneous because there was no evidence of a startling event when the statement was admitted.  Lossiah is correct that evidence of a startling event had not been fully developed when the statement was admitted.  However, this gap in the evidence was later rectified.  When the statement was admitted, Smith had testified that the students were walking back and forth in the hallway going to the cafeteria and that the older child took the younger child out of the lunch line and whispered something to her.  However, later in the trial, the younger child testified "I was about to go to lunch.  I asked Ms. Smith if I could use the restroom.  I seen Jason at the front office, so I ran to tell Kelly Smith that I didn't want to go with him, and she asked me why, and I told her that - - what happened to me."  Id. at 308.  The prior sexual assault caused the child to be fearful when she saw Lossiah in the school hallway.  Her seeing Lossiah in the hallway was a startling event which would support the admission of Smith's hearsay statement.

Lossiah argues that it is "unclear as to when [the younger sister] may have seen [him] or how much time elapsed between then and her statement to Kelly Smith."  Aplt. Reply Br. at 3.  However, the testimony at trial indicates that upon seeing Lossiah in the office, the younger sister "ran to tell" Smith.  Vol. XV,

5

ROA at 308. This chronology of events indicates immediacy, not delay. That her statement quickly followed her seeing Lossiah is supported by the school sign-out sheet, which shows Lossiah checked the older child out from the office at 11:20, and Smith's testimony that the younger child sought protection around 11:30. Aplee. Br., Exhibit 8A; ROA, Vol. XIV, at 213.

Lossiah also argues that his presence at the school was not uncommon, thus he contends the younger child seeing him in the office would not constitute a startling event. While it is true that the Lossiah family, including the defendant, frequently came to the school, that fact becomes irrelevant when the intervening sexual assault on the younger child is also considered. That intervening fact would cause the child to respond as she did upon seeing him.

Lossiah also argues that the younger child's statement concerning a prior rape did not relate to the startling event of her seeing him at ths school. "Permissible subject matter of the statement is limited under [the present sense impression exclusion] to description or explanation of the event or condition, the assumption being that spontaneity, in the absence of a startling event, may extend no farther. [With the excited utterance exclusion,] however, the statement need only 'relate' to the startling event or condition, thus affording a broader scope of subject matter coverage." Fed. R. Evid. 803, Advisory Committee's Notes.

In Esser v. Commonwealth, 566 S.E.2d 876, 879 (Va. Ct. App. 2002), the

6

Virginia Court of Appeals concluded that "[t]he basis of the excited utterance exception rests with the spontaneity and impulsiveness of the statement; thus, the startling event does not have to be the actual crime itself, but rather may be a related occurrence that causes such a reaction." In Esser, a victim of a sexual assault informed her mother that her aunt's boyfriend had raped her. Id. at 880. Finding the statement admissible as an excited utterance, the court noted that "[t]he statement was made the first time she believed she was to be returned to the place where she was assaulted and to the control of appellant, the man who had raped and sexually assaulted her." Id.

Similarly, the younger child's statement here that Lossiah had previously raped her is related to the startling event of seeing him at the school. Further, the younger child later testified about the statement she made to her teacher, and Lossiah had the opportunity to cross-examine her. Thus, the district court did not abuse its discretion in admitting the child's statement as an excited utterance.

*Sufficiency of the evidence*

Lossiah contends there was insufficient evidence to support his convictions for violating 18 U.S.C. §§ 2241(c) and 2246 (Counts I and II). "Sufficiency of the evidence to support a jury's verdict is a legal issue that is reviewed *de novo*. In order to conclude that the evidence was insufficient as a matter of law, the court must view the evidence and reasonable inferences therefrom in the light

7

most favorable to the government and then determine that no rational jury could have found Defendant guilty beyond a reasonable doubt." United States v. Norman, 388 F.3d 1337, 1340 (10th Cir. 2004) (internal citations and quotation marks omitted).

As regards the convictions at issue, the older child testified as to sexual activity with Lossiah that she was forced to perform, including vaginal and anal sex. She also testified that she reported these same acts to Dr. Bradley. The medical evidence presented through Dr. Bradley's testimony was consistent with vaginal penetration. Dr. Bradley also testified that the older child described both acts of sexual abuse to her during the medical examination. When viewed in the light most favorable to the government, there is sufficient evidence for a rational jury to have found Lossiah guilty beyond a reasonable doubt. See Rojem v. Gibson, 245 F. 3d 1130, 1141-42 (10th Cir. 2001).

Lossiah asks us to conclude that the older child's testimony was incredible and to reweigh the evidence. "[T]he credibility of witnesses is a matter for the jury, and on appeal we must resolve credibility issues in the jury's favor unless the testimony is inherently incredible." United States v. Smith, 131 F.3d 1392, 1399 (10th Cir. 1997). On the record presented, we cannot conclude the child's testimony was inherently incredible.

*Inconsistent verdicts*

The jury acquitted Lossiah on Count III, but convicted as to Count II. Lossiah contends that there is less evidence to support a guilty verdict as to Count II than Count III. He concedes that a verdict should not be overturned merely because it is inconsistent, but argues that the jury's verdicts are not only inconsistent, but also exceed the bounds of rationality.

The fatal flaw in Lossiah's argument is that these verdicts are not inconsistent or irrational. The acts at issue in Count II and Count III are different and distinct acts. Lossiah could have committed one act of sexual abuse without having committed the other. Further, there was medical evidence that supported the conviction on Count II, while there was no such evidence to support the charge in Count III. A rational jury could have rendered a different verdict on Count II than it did on Count III on that basis alone.

Affirmed.

Entered for the Court


Mary Beck Briscoe
Circuit Judge

9