508

# CIRCUIT COURT OF THE CITY OF NORFOLK

Commonwealth of Virginia

    v.

Tyrell L. Johnson

February 14, 2007

Case Nos. CR06-1399, CR06-3356

BY JUDGE ALFRED M. TRIPP

This case came before the Court on January 16, 2007, for a jury trial. Before the trial could begin, the parties indicated that they would like to be heard on the Motion in Limine filed by the Commonwealth to determine the admissibility of statements made by Kaycee Chapman, the alleged victim in this case. I have reviewed the written submissions of both parties as well as the transcript of the preliminary hearing in this case, and I am now prepared to issue a ruling on the Commonwealth's Supplemental Motion in Limine. The Commonwealth's original Motion in Limine sought a ruling on the admissibility of statements made by Chapman to Emma Reyes during the week preceding her death, but the Commonwealth's Supplemental Motion in Limine only addresses the statements made by Chapman to Reyes on March 8, 2006. Thus, the ruling set forth in this letter applies only the statements made by Chapman on March 8.

The evidence introduced at the preliminary hearing, held on May 17, 2006, before Judge Carlson in the Juvenile and Domestic Relations Court, indicates that Chapman died on March 8, 2006, after suffering a single gunshot wound. At the preliminary hearing, Emma Reyes testified that Chapman called her at about 8:00 a.m. on the day of her death. Reyes did not answer that call, but did return Chapman's call and left a voicemail when Chapman did not answer. Reyes testified that Chapman then called back at "around 8:18" and the two then spoke on the telephone. (Tr. 9.)

Reyes further testified that Chapman told her that the Defendant, Tyrell Johnson, had broken into Chapman's house. Chapman told Reyes that she had noticed that a piece of plastic had been removed from a window and observed that a coat belonging to Johnson was on the floor of the house. Chapman reported that she had found Johnson hiding in the closet and that Johnson had pulled a gun on her. (Tr. 10.) At some point during the telephone call to Reyes, Chapman confronted Johnson. Reyes testified that she knew Chapman was speaking to Johnson because she could hear him in the background. (Tr. 15.) Reyes testified that Chapman ordered Johnson to leave and apparently threatened to call the police when he refused. (Tr. 13-14.) The transcript of Reyes' preliminary hearing testimony does not explicitly include Chapman's threat to call the police on the defendant. The Commonwealth's motions, however, indicate that this is part of the evidence that they wish to introduce. Supplemental Motion in Limine, p. 1. Reyes then heard Chapman scream, and the call was terminated. Reyes also testified, however, that she never heard a gunshot. (Tr. 15.)

The Commonwealth has indicated that it intends to offer into evidence the statements made by Chapman over the telephone to Reyes on March 8, 2006. The Defendant contends that the admission of these statements would violate his right to confront the witnesses against him as guaranteed by the Sixth Amendment to the United States Constitution. The Commonwealth argues that the admission of these statements would not violate the Sixth Amendment and urges the Court to admit the statements under one of the exceptions to the general prohibition against the admission of hearsay into evidence. The Court will address both of these issues in turn.

As a preliminary matter, it is important to note that the Commonwealth concedes that the statements in question are in fact hearsay. In other words, the Commonwealth has not indicated an intention to offer the statements for a purpose other than to prove the truth of the matters asserted. Proponents of this type of evidence may avoid a Sixth Amendment violation as well as the general prohibition against the admission of hearsay by offering the statements

to prove something other than the truth of the matter asserted in the statement. See *Hodges v. Commonwealth*, 272 Va. 418, 429, 432 (2006). In this case, however, the parties agree that the contested evidence is in fact hearsay.

### Confrontation Clause

In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court of the United States held that the admission of "testimonial" hearsay evidence violates the Confrontation Clause of the Sixth Amendment unless the declarant is unavailable to testify at trial and the defendant has had a "prior opportunity for cross-examination" of that declarant. *Id.* at 68. The Supreme Court declined to "spell out a comprehensive definition of 'testimonial'," but noted that "it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.*

The Supreme Court revisited the issue opened in *Crawford* when it decided *Davis v. Washington* and *Hammon v. Indiana* (consolidated as *Davis v. Washington*, 126 S. Ct. 2266 (2006)). In *Davis*, the Supreme Court addressed the question of whether "statements made to law enforcement personnel during a 911 call or at a crime scene are 'testimonial' and thus subject to the requirements of the Sixth Amendment's Confrontation Clause." *Id.* at 2270. The Supreme Court decided these cases by ruling that:

> [s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Id.* at 2273-74. Although the involvement of law enforcement with the statements in *Crawford* and *Davis* is highly significant, it is not dispositive of the question of whether a statement is testimonial; in *Davis*, the Court cautioned that its opinion should not be read "to imply ... that statements made in the absence of any interrogation are necessarily nontestimonial." *Id.* at 2274, n. 1. *Davis* indicates that a statement is testimonial if it is "directed at establishing the facts of a past crime, in order to identify (or provide evidence to convict) the perpetrator." *Id.* at 2276. The *Davis* Court focused on the fact that the declarant

"simply was not acting as a *witness;* she was not *testifying*" when she called 911. *Id.* at 2277 (emphasis in original). The Court also noted that "[n]o 'witness' goes into court to proclaim an emergency and seek help." *Id.*

The Court finds that the statements made over the phone by Chapman to Reyes on March 8, 2006, are nontestimonial. In his written response to the Commonwealth's motion, the Defendant argues that Chapman's statements are testimonial. The Commonwealth argues that the statements made during the phone call are nontestimonial because "[t]here was no police intervention or questioning, there was no extensive time lapse after the events occurred, and the statements were certainly not made in contemplation for use in court." Supplemental Motion, p. 2. In his Supplemental Response, the defendant points out that Chapman threatened to call the police on him and argues that she made her statements "*in anticipation of later use at trial.*" Supplemental Response, p. 3 (emphasis in original). The Commonwealth further argues that the Court should interpret Chapman's statements as "evidencing her anger, outrage, and immediate reactions to finding the Defendant and his items in the residence." Supplemental Motion, p. 2. The Commonwealth's argument on this point is persuasive. Chapman was not acting as a witness when she called Reyes. Rather, Chapman called Reyes to describe the morning's events because of her excitement over them. When Chapman threatened to call the police, she did not do so in anticipation of testimony at a future hearing. Furthermore, Chapman was not acting as a witness when she engaged Johnson in the argument that Reyes overheard.

In *Davis,* the Supreme Court held that:

> [o]nly statements of this [testimonial] sort cause the declarant to be a "witness" within the meaning of the Confrontation Clause. It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause.

*Id.* at 2273 (internal citation omitted).

The Supreme Court of Virginia followed the rationale of the U.S. Supreme Court's opinion in *Davis* in deciding *Hodges v. Commonwealth,* 272 Va. 418, 435 (2006), when it ruled that the admissibility of nontestimonial hearsay "is determined under the law of hearsay rather than the Confrontation Clause."

In the present case, Ms. Chapman is deceased and thus unavailable to testify at trial. Johnson has not had an opportunity to cross-examine her on her statements. Chapman's statements to Reyes, however, were nontestimonial

and, as such, their admission would not violate the Confrontation Clause. Because the Commonwealth admits that the statements are hearsay, however, they may only be admitted into evidence at trial if they fall under an established exception to the hearsay rule.

### State Law Hearsay Exceptions

The Commonwealth argues that Chapman's statements to Reyes are admissible under any one of the following three exceptions to the hearsay rule: excited utterance, present sense impression, and state of mind. In Virginia, these three exceptions are grouped together under the "res gestae rule." Charles Friend, *The Law of Evidence in Virginia*, Fifth Edition, § 18-16. According to Friend, the res gestae exceptions "all involve situations in which words ... accompany an incident and serve to explain that incident. The element of spontaneity is present in each of these exceptions and serves as the 'guarantee of trustworthiness' always sought for in evidence admitted as an exception to the hearsay rule." *Id.*

Because of the requirement of spontaneity, the timing of Chapman's statements to Reyes is important in determining the admissibility of the statements. The transcript suggests that, at the beginning of the call, Chapman was describing events that had already happened. Reyes testified that Chapman began the call by asking, "Guess what the MF [the Defendant] did?" (Tr. 9-10.) She informed Reyes that Johnson "broke into the house again." (Tr. 10.) On cross-examination, Reyes testified that Chapman had found the defendant in the closet prior to her conversation with Reyes. (Tr. 24.) According to Reyes, Chapman then "mentioned that he [the defendant] had pulled a gun out on her." (Tr. 10.) At some point during the call to Reyes, however, Chapman confronted Johnson and began speaking directly to him, ordering him to leave the house. (Tr. 10, 13-14.)

In *Esser v. Commonwealth*, 38 Va. App. 520, 525 (2002), the Court of Appeals of Virginia held that a "statement comes within the excited utterance exception to the hearsay rule and is admissible to prove the truth of the matter stated, when the statement is spontaneous and impulsive, thus guaranteeing its reliability." Furthermore, in order to be admissible, the statement "must be prompted by a startling event and be made at such time and under such circumstances as to preclude the presumption that it was made as the result of deliberation." *Id.* Finally, the *Esser* court noted that the "decision whether the statement qualifies as an excited utterance lies within the discretion of the trial court." *Id.*

In his submissions to the Court, the Defendant correctly points out that statements admitted under the excited utterance exception "must be ... statement[s] of fact and not mere opinion" and also must be "natural declaration[s] or statements growing out of the event, and not ... mere narrative[s] of ... past, completed affair[s]." *Chappell v. White*, 182 Va. 625, 633 (1944) (quoting *Beck v. Dye*, 200 Wash. 1 (1939)). The Defendant argues that Chapman's statements do not qualify under the excited utterance exception because they are statements about events that had already occurred. The Court does not accept this argument, however. Chapman's statements were not the product of deliberation. She had recently undergone the shock of finding signs that her home had been invaded and possibly the shock of discovering the invader himself. The evidence indicates that this happened shortly before her telephone conversation with Reyes. Courts in Virginia have "been careful to avoid specifying a time limit" that would control this hearsay exception. *Friend, supra*, at 693. It seems reasonably clear that, due to the shock of the home invasion, as well as the brief period of time between the events and the telephone conversation, that Chapman's statements are reliable and are not the product of deliberation.

Because of the prohibition of the admission of opinion evidence under this exception to the hearsay rule, however, the Court is troubled by those portions of the conversation in which Chapman referred to the Defendant as a "crackhead" or a "crackhead bitch." (Tr. 14.) These are not statements of fact and they do not "grow ... out of the event" in question, as the law requires. Furthermore, the admission of these statements might result in unfair prejudice to the Defendant, especially at a jury trial.

## Conclusion

The statements made by Chambers on the morning of March 8, 2006, and overheard by Reyes will be admitted into evidence against the Defendant under the excited utterance exception to the hearsay rule. The Court admits this evidence subject to the exclusion of the "crackhead" remarks because those are prejudicial to the Defendant. Because the statements are not testimonial hearsay, their admission does not violate the defendant's Sixth Amendment right to confront the witnesses against him.