COURT OF APPEALS OF VIRGINIA


Present:  Judges Clements, Kelsey and Senior Judge Annunziata
Argued at Alexandria, Virginia


DONALD LEE CAISON, JR.
                                                    OPINION BY
v.      Record No. 1405-07-4            JUDGE JEAN HARRISON CLEMENTS
                                                    JULY 29, 2008
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Gaylord L. Finch, Jr., Judge

Dawn M. Butorac, Deputy Public Defender, for appellant.

Donald E. Jeffrey, III, Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


Donald Lee Caison, Jr., (appellant) was convicted in a jury trial of manslaughter, in

violation of Code § 18.2-35.  On appeal, he contends the trial court erred in admitting into

evidence a recording of a 911 call and in finding the evidence sufficient to support his

conviction.  Finding no error, we affirm the trial court's judgment and appellant's conviction.

I.  BACKGROUND

"On appeal, we construe the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom."  Zoretic v. Commonwealth,

13 Va. App. 241, 242, 409 S.E.2d 832, 833 (1991) (citing Higginbotham v. Commonwealth, 216

Va. 349, 352, 218 S.E.2d 534, 537 (1975)).  Viewed by that standard, the evidence demonstrates

that around 2:00 a.m. on May 24, 2006, appellant met Katie McLachlan in front of her home at

1103 Clarke Street in Herndon, Virginia.  In his pocket, appellant carried an unopened 40-ounce

beer bottle.  As appellant and McLachlan walked toward her house, they encountered

McLachlan's roommate, Maria Gann, and her boyfriend, William Green.  After McLachlan

introduced appellant to Green, Green punched appellant in the nose. Appellant then fled, and Green pursued him. McLachlan and Gann followed the two men. During the chase, appellant dropped the 40-ounce beer bottle on the street. Moments later, Green caught up to appellant and a struggle ensued between the men. At some point during the affray, appellant stabbed Green with a knife. Appellant immediately fled from the scene.

After appellant fled, McLachlan and Gann carried Green, who appeared unconscious, back to the front yard of their residence. Within minutes, McLachlan called 911 and spoke to an operator employed by the Fairfax County Police. The dialogue between McLachlan and the 911 operator, in relevant part, transpired as follows:

911 OPERATOR: What's the problem?

CALLER: I don't know. My friend was hit in the stomach with a beer bottle.

\* \* \* \* \* \* \*

911 OPERATOR: Okay. How did it happen?

CALLER: I don't know. I don't know. He was here, then one of my friends came and they just started fighting, and then he hit him with a beer bottle.

911 OPERATOR: Okay. Ma'am. Ma'am, I cannot understand a word that you're saying. You need to settle down and take the phone away from – like further away from your mouth; it's mumbled.
You said that he hit him with it?

CALLER: Yes.

911 OPERATOR: Okay. Is he bleeding?

CALLER: Yes.

911 OPERATOR: Is he conscious?

CALLER: No.

911 OPERATOR: Okay. Is he breathing?

- 2 -

CALLER:  He's breathing, yes.

\*          \*          \*          \*          \*          \*          \*

911 OPERATOR:  Okay.  Where is the guy that cut him?

CALLER:  He ran.

911 OPERATOR:  Okay.  What does he look like?

CALLER:  A tall black male, about 6 foot, 6 foot 1.

911 OPERATOR:  Does anybody know who he is?

CALLER:  Yes.  He's Donald Lee Caison.

\*          \*          \*          \*          \*          \*          \*

911 OPERATOR:  Okay.  All right.  What's he wearing?

CALLER:  A black hoodie.

911 OPERATOR:  Say that—

CALLER:  A white tee-shirt.

911 OPERATOR:  I'm sorry—a black hoodie?

CALLER:  White tee-shirt.

911 OPERATOR:  And a white tee-shirt?

CALLER:  And black Dickies.

\*          \*          \*          \*          \*          \*          \*

911 OPERATOR:  Does he have any weapons on him still?

CALLER:  No, I don't know.

911 OPERATOR:  And do you know which way he ran?

CALLER:  He ran towards Herndon Parkway.

911 OPERATOR:  How many minutes ago?

CALLER:  About five minutes ago.

- 3 -

911 OPERATOR: Okay. All right. You're—okay, you're outside there with your friends?

CALLER: Yes.

911 OPERATOR: Okay. Let me stay on the phone with you to make sure his condition doesn't get worse, and I've got to get somebody to call Herndon. Okay? Hold on just one second.

CALLER: Okay.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

911 OPERATOR: Is he awake?

CALLER: Yes.

911 OPERATOR: Okay. Tell him—do you have a cloth or something you can hold on his stomach? You need to get a clean shirt or a clean towel and hold it on the bleeding. Okay?

CALLER: Okay.

Following the incident, Green died as a result of stab wounds inflicted with a knife during the altercation. Subsequently, a jury convicted appellant of manslaughter and this appeal followed.

## II. 911 CALL

On appeal, appellant contends the trial court abused its discretion in admitting the 911 recording into evidence under the excited utterance exception to the hearsay rule. We disagree with appellant.

"As a general rule, hearsay evidence is incompetent and inadmissible," and "the party seeking to rely upon an exception to the hearsay rule has the burden of establishing admissibility." Neal v. Commonwealth, 15 Va. App. 416, 420-21, 425 S.E.2d 521, 524 (1992).

"There is no fixed rule by which the question whether the statement is admissible as an excited utterance can be decided." Clark v. Commonwealth, 235 Va. 287, 292, 367 S.E.2d 483, 486 (1988). "Resolution of the issue depends [upon] the circumstances of each case." Id.

- 4 -

> "A statement comes within the excited utterance exception to the hearsay rule and is admissible to prove the truth of the matter stated, when the statement is spontaneous and impulsive, thus guaranteeing its reliability. . . . The statement must be prompted by a startling event and be made at such time and under such circumstances as to preclude the presumption that it was made as the result of deliberation. In addition, the declarant must have firsthand knowledge of the startling event. The decision whether the statement qualifies as an excited utterance lies within the discretion of the trial court."

Esser v. Commonwealth, 38 Va. App. 520, 525, 566 S.E.2d 876, 879 (2002) (quoting Braxton v. Commonwealth, 26 Va. App. 176, 184, 493 S.E.2d 688, 691 (1997)).

Here, during rebuttal, the Commonwealth moved to admit into evidence the recording of McLachlan's dialogue with the 911 operator. Out of the jury's presence, the trial court heard the 911 recording. In resolving that the recording qualified as an excited utterance, the trial court found McLachlan, a witness to the event, made "spontaneous" statements, under the influence of and contemporaneous with the "very startling event," and without "any time for reflection" or "premeditation." Appellant claims, nonetheless, that the call does not qualify as an excited utterance because McLachlan's statements were made "in response to questions from the 911 operator."

We addressed the same argument in Bowling v. Commonwealth, 12 Va. App. 166, 403 S.E.2d 375 (1991). In that case, the victim, who was mortally wounded from gunshot wounds to the stomach, called 911 about ten minutes after the shooting. Id. at 177, 403 S.E.2d at 381. During the exchange with the 911 operator, the victim disclosed that he was shot "with a .25 or .32" by "one black male" who "was running" and "headed to the Fort Cinema." Id. at 175, 403 S.E.2d at 380. Bowling argued, like appellant, that because the victim's statements were made "in response to questions" by the 911 operator, they were not sufficiently spontaneous to be admitted under the excited utterance exception. Id. We rejected Bowling's argument, noting as follows:

> "To pivot the admissibility of a subsequent statement, however spontaneous, on the question[] of whether it was prompted by an equally spontaneous inquiry would serve no useful purpose. If the question or questioner suggested or influenced the response, then the declaration may lack the necessary reliability to be admitted."

Id. at 176, 403 S.E.2d at 380 (quoting Martin v. Commonwealth, 4 Va. App. 438, 442, 358 S.E.2d 415, 418 (1987)). Concluding that the victim's statements to the 911 operator "were not the result of premeditation, reflection or design, but a reaction to the startling events" which resulted in the victim's death several hours later, we held the trial court properly admitted the 911 recording pursuant to the excited utterance exception to the hearsay rule. Id. at 177, 403 S.E.2d at 381.

The same rationale applies here. McLachlan, who had just witnessed a violent confrontation, aided the victim who lay mortally wounded from the stabbings. McLachlan also faced the threat that the assailant would return to the scene to perpetrate further harm. McLachlan spoke to the 911 operator and described the incident and the assailant within minutes of the event. The operator responded to McLachlan's initial report of the confrontation to quickly ascertain the gravity of peril McLachlan faced and by directing McLachlan to render aid to a dying man. Considering the reliability of the statements in accord with Bowling, we conclude the trial court did not abuse its discretion in finding that McLachlan's responses to the 911 operator's questions were not suggested or influenced by the questions posed by the 911 operator.

Thus, the fact that McLachlan was answering questions, rather than relaying a spontaneous narrative, does not indicate her statements were not excited utterances. See United States v. Joy, 192 F.3d 761, 766-67 (7th Cir. 1999) (holding that the fact that the witness' statements to a 911 operator were responses to questions did not mean they were not "spontaneous, exited, and impulsive"). Compare Clark, 235 Va. at 293, 367 S.E.2d at 486

- 6 -

(holding that statements made by a gunshot victim as to his assailant's identity, while the victim was mortally wounded and suffering from the trauma of the shooting, were admissible as excited utterances even though the statement was prompted by a question some five to ten minutes after the shooting), and Harris v. Commonwealth, 8 Va. App. 424, 430, 382 S.E.2d 292, 295-96 (1989) (holding that statements made by gunshot victim within ten minutes of the shooting while victim lay fatally wounded are admissible as excited utterances even though the victim made the statements in response to questions), and Martin, 4 Va. App. at 442, 358 S.E.2d at 418 (holding that statements made by child rape victim are admissible as excited utterances even though the victim made the statements in response to questions), with Goins v. Commonwealth, 218 Va. 285, 288, 237 S.E.2d 136, 138 (1977) (holding that a victim's statement identifying assailant, made ten to fifteen minutes after police had interviewed the victim, when police led the victim to the police vehicle for the purpose of observing assailant, did not qualify as an excited utterance), and Nicholaou v. Harrington, 217 Va. 618, 622, 231 S.E.2d 318, 322 (1977) (holding that a statement made by a witness at least six or seven minutes after an automobile-motorcycle collision, when the investigating officer was questioning one of the parties to the accident, lacked the characteristics of a spontaneous utterance). Indeed, "it is possible for someone to be too excited to volunteer pertinent information . . . , and thus the inherent 'guarantee of truthfulness' supporting the admission of excited utterances applies equally to declarations made in response to an inquiry." Joy, 192 F.3d at 767. Accordingly, the trial court did not err in admitting the 911 recording into evidence under the excited utterance exception to the hearsay rule.

Appellant next contends the Confrontation Clause of the Sixth Amendment precluded admission of the 911 recording. Relying on Crawford v. Washington, 541 U.S. 36 (2004), and its progeny, Davis v. Washington, 547 U.S. 813 (2006), appellant claims that McLachlan's statements were testimonial in nature and, therefore, inadmissible. We disagree.

Although we will not disturb on appeal decisions regarding the admissibility of evidence absent an abuse of the trial court's discretion, Breeden v. Commonwealth, 43 Va. App. 169, 184, 596 S.E.2d 563, 570 (2004), we review *de novo* whether a particular category of proffered evidence is "testimonial hearsay," Jasper v. Commonwealth, 49 Va. App. 749, 755, 644 S.E.2d 406, 409 (2007).

> The Confrontation Clause of the Sixth Amendment to the United States Constitution, a "procedural guarantee" that also "applies to state prosecutions," Michels v. Commonwealth, 47 Va. App. 461, 466, 624 S.E.2d 675, 678 (2006), provides that, "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him," U.S. Const. amend. VI.

Id. at 753, 644 S.E.2d at 409. Recently, the United States Supreme Court considered the right of confrontation in Crawford, clarifying that "[w]here testimonial evidence is at issue, . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." Crawford, 541 U.S. at 68. "Now, under Crawford, the question whether admission of a hearsay statement against a criminal defendant violates the Confrontation Clause turns on whether the statement is 'testimonial' in nature." Magruder v. Commonwealth, 275 Va. 283, 294-95, 657 S.E.2d 113, 118 (2008).

Subsequently, in Davis, the United States Supreme Court expounded on what Crawford characterized as "testimonial" statements in the context of an interrogation during a 911 call. In doing so, the Court announced the primary purpose doctrine, as follows:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

Davis, 547 U.S. at 822. Examining the call in question under this framework, the Court noted, as follows:

> (1) the caller was describing the events as they were happening; (2) the caller was facing an ongoing emergency; (3) the nature of what was asked and answered was necessary to resolve the present emergency rather than learn what happened in the past; and (4) the caller's answers were frantic[, provided over the phone, in an environment that was not tranquil, or even (as far as any reasonable 911 operator could make out) safe].

United States v. Proctor, 505 F.3d 366, 371 (5th Cir. 2007) (citing Davis, 547 U.S. at 827); see also United States v. Cadieux, 500 F.3d 37, 41 (1st Cir. 2007). Because the caller was not testifying as a witness, but rather, was "enabl[ing] police assistance to meet an ongoing emergency," the Court concluded the 911 call did not produce testimonial statements. Davis, 547 U.S. at 828.

Applying the primary purpose doctrine to the facts of this case, we conclude that McLachlan's statements to the 911 operator were not testimonial in nature. Viewing the circumstances objectively, it is clear that McLachlan faced an ongoing emergency manifested by two sources of distress: Green's life-threatening condition and the present and proximate danger that appellant, a potentially armed assailant who had stabbed Green and fled into the neighborhood, would return to the scene to injure Green, McLachlan, or Gann.

McLachlan described the events as they were happening. She spoke of whether Green was conscious, bleeding, and breathing as the deteriorating condition was actually occurring. The operator responded to the trauma by directing McLachlan to apply pressure to the wounds with a clean towel to slow the bleeding and kept her on the phone "to make sure [Green's] condition [did not] get worse." Asked by the operator how Green was injured, who committed the stabbing, whether the perpetrator was armed, and where the perpetrator fled, McLachlan replied that appellant hit Green in the stomach with a beer bottle, she did not know if he was

- 9 -

armed, and he fled "towards Herndon Parkway." In addition, the emergency was ongoing throughout the interrogation. The nature of what was asked and answered was necessary to enable the police to arrange for the arrival of the appropriate medical services to treat Green's injuries and to warn police that appellant, a dangerous and potentially armed man, ran at-large in the neighborhood. Because McLachlan rendered aid to a dying man while facing the threat of appellant's return to the scene, she was "in an environment that was neither tranquil nor safe." Cadieux, 500 F.3d at 41 (citing Davis, 547 U.S. at 826-27).

Appellant claims, however, that McLachlan's statements were testimonial because the original emergency ended when the altercation between appellant and Green ceased. Thus, he argues, the call focused on a criminal investigation of a completed event evident from the operator's questions as to "who was the cause of the wounds, where that person went and what he was wearing." Appellant's contention has no merit.

In Proctor, a witness called 911 immediately following the crime, recounting that the defendant stole a gun, fired it twice, and fled into a nightclub with the loaded weapon. Proctor, 505 F.3d at 371-72. The caller described the defendant and his criminal history as a convicted felon, reported that he was on drugs, and described his location. Id. On appeal, the defendant argued "the emergency had already passed, because he had run away with the weapon at the time of the 911 call and, therefore, the 911 conversation was testimonial." Id. at 372. Rejecting the defendant's claim, the court reasoned that his retreat into a nightclub "provided no assurances that he would not momentarily return" to confront the caller and other witness. Id. Moreover, as the court noted, the caller "could have reasonably feared that the people inside the nightclub were in danger." Id. The court concluded that a "reasonable viewing" of the 911 call was that the caller and operator "were dealing with an ongoing emergency involving a dangerous felon, and that the 911 operator's questions were related to the resolution of that emergency." Id.

The same conclusion is equally applicable in this case. The emergency had not ended and was not limited to rendering aid to Green. Rather, the emergency also involved a dangerous assailant who had just stabbed Green, was potentially armed, and fled into the surrounding neighborhood with no guarantee that he would not return and cause further harm to Green, McLachlan, Gann, or other residents of the neighborhood. McLachlan could have "reasonably feared" that she, Green, and Gann were in danger. In fact, the operator's questions showed that she was trying to resolve the emergency by attempting to compose McLachlan, asking her to "settle down," and then by seeking to understand the seriousness of the peril McLachlan faced.

Here, as in <u>Proctor</u>, the operator's effort to resolve the ongoing emergency by establishing the identity of the assailant, including his location and physical description, so that the officers might know whether they would be encountering a violent felon, did not render McLachlan's responses testimonial. <u>See also</u> <u>Cadieux</u>, 500 F.3d at 41 (concluding that the caller responded to the dispatcher's questions tailored to identify the location of the emergency, its nature, and the perpetrator, and the emergency did not end until the perpetrator was apprehended); <u>United States v. Arnold</u>, 486 F.3d 177, 189 (6th Cir. 2007) (concluding that the "exigency of the moment" had not ended even though the victim left the house where assailant remained, went around the corner, and called 911); <u>United States v. Clemmons</u>, 461 F.3d 1057, 1060-61 (8th Cir. 2006) (concluding that the gunshot victim's statements made just after the shooting in response to the police officer's questions as to who shot him were nontestimonial); <u>United States v. Thomas</u>, 453 F.3d 838, 844 (7th Cir. 2006) (concluding that the caller's answers were nontestimonial even though made in response to the 911 operator's questions as to "who had the gun" and where the victim lay injured).

Appellant further contends that the "prejudice of the 911 call" to appellant "far outweighed any probative value." Specifically, he claims that "the crying of Ms. Gann and

- 11 -

Ms. McLachlan" and the "moaning noises being made by Mr. Green in the background" had a prejudicial effect. We disagree with appellant.

"In determining whether evidence should be admitted, the trial court must apply a balancing test in assessing the probative value of the evidence and its prejudicial effect." Dandridge v. Marshall, 267 Va. 591, 596, 594 S.E.2d 578, 581 (2004). "This determination is left to the sound discretion of the trial court and will be reversed on appeal only upon a showing of an abuse of discretion." Lombard v. Rohrbaugh, 262 Va. 484, 492, 551 S.E.2d 349, 353 (2001).

> In a sense, all "evidence tending to prove guilt is prejudicial"—at least from the point of view of the person standing trial. Virginia law, however, intervenes only when the alleged prejudice tends to inflame irrational emotions or leads to illegitimate inferences. And even then, it becomes a matter of degree. . . . We generally defer to trial judges on this subject because they, unlike us, participate first person in the evidentiary process and acquire competencies on the subject that we can rarely duplicate merely by reading briefs and transcripts.

Thomas v. Commonwealth, 44 Va. App. 741, 757-58, 607 S.E.2d 738, 746 (citations omitted) (quoting Powell v. Commonwealth, 267 Va. 107, 141, 590 S.E.2d 537, 558 (2004)), aff'd on reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005).

In this case, the trial court judge implicitly found no prejudice when he made a finding of fact that he "couldn't hear Mr. Green say anything" on the 911 recording. "Principles of appellate review require that we affirm determinations of fact made by the trial court unless there is no support for such determinations in the record." Commercial Underwriters Ins. Co. v. Hunt & Calderone, P.C., 261 Va. 38, 44, 540 S.E.2d 491, 494 (2001). Based on our review, we cannot conclude that this factual finding of the trial court is without support in the record. In addition, we cannot say that the crying of Ms. Gann and Ms. McLachlan, clearly a natural reaction to the violent stabbing of their friend, rendered the recording prejudicial. See Joseph v.

Commonwealth, 249 Va. 78, 85-86, 452 S.E.2d 862, 867 (1995) (concluding that a videotape was not inadmissible on its second playing merely because "the jury could hear the gunshot and the victim's short scream"). Under the circumstances, we cannot conclude that the trial court abused its discretion in finding no prejudice.

### III.  SUFFICIENCY OF THE EVIDENCE

Appellant asserts the evidence was insufficient to support his conviction for voluntary manslaughter because he claims he acted in self-defense. We disagree.

In reviewing the sufficiency of the evidence to support a conviction, "'we must discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom.'" Watkins v. Commonwealth, 26 Va. App. 335, 348, 494 S.E.2d 859, 866 (1998) (quoting Cirios v. Commonwealth, 7 Va. App. 292, 295, 373 S.E.2d 164, 165 (1988)). "In a jury trial, the credibility of the witnesses and the weight accorded to their testimony are matters solely within the province of the jury." Lynn v. Commonwealth, 27 Va. App. 336, 351, 499 S.E.2d 1, 8 (1998). "We will not disturb the conviction unless it is plainly wrong or unsupported by the evidence." Banks v. Commonwealth, 41 Va. App. 539, 545-46, 586 S.E.2d 876, 879 (2003).

A defendant claiming self-defense "implicitly admits the killing was intentional." McGhee v. Commonwealth, 219 Va. 560, 562, 248 S.E.2d 808, 810 (1978). "To justify the use of deadly force, the defendant must have reasonably feared death or serious bodily injury from his victim, and there must have been an overt threat." Peeples v. Commonwealth, 30 Va. App. 626, 634, 519 S.E.2d 382, 386 (1999) (en banc). "[T]he amount of force used must be reasonable in relation to the harm threatened." Diffendal v. Commonwealth, 8 Va. App. 417, 421, 382 S.E.2d 24, 26 (1989). Furthermore, an individual's right to self-defend "begins where the necessity begins and ends where it ends." Thomason v. Commonwealth, 178 Va. 489, 498,

17 S.E.2d 374, 378 (1941). "Although undisputed facts may establish self-defense as a matter of law, whether the accused establishes that he or she acted in [self-defense] is generally a question of fact." Lynn, 27 Va. App. at 353, 499 S.E.2d at 9 (citations omitted).

At trial, appellant testified that Green introduced the knife into the altercation and wielded it in appellant's direction. Appellant further claimed that he believed Green was going to stab him and stated that he pried the knife from Green's hand. Appellant also admitted that he swung the knife at Green as Green continued to punch him. Gann testified that during the altercation, she saw nothing in Green's hand. A forensic pathology expert testified that Green sustained three stab wounds to the chest and one stab wound to the back.

Considering the evidence adduced at trial, the jury could have concluded that appellant lied during his testimony and could have found that he, in fact, introduced the knife into the affray and stabbed Green. Indeed, the jury was entitled to credit the Commonwealth's evidence that Gann did not see Green with a knife. In the alternative, the jury could have found that Green originally had the knife but that appellant wrestled it from him and then stabbed Green. Upon either plausible explanation, the jury, acting within its fact finding discretion, could have found that the amount of force appellant used, as evidenced by the four stab wounds to Green, was not reasonable against Green, who either never possessed the knife, or no longer had the knife. Thus, the jury "resolv[ed] the conflicts and inconsistencies [therein] against [appellant] and [found] ultimately that the evidence constituted proof of guilt beyond a reasonable doubt." Lockhart v. Commonwealth, 34 Va. App. 329, 343, 542 S.E.2d 1, 7 (2001). We hold, therefore, that the evidence was sufficient to convict appellant of voluntary manslaughter.

IV.  CONCLUSION

For these reasons, we affirm the trial court's judgment and appellant's conviction.

Affirmed.