COURT OF APPEALS OF VIRGINIA

Present:    Chief Judge Felton, Judges Elder and Petty

REMONE J. HOUCHENS

MEMORANDUM OPINION[*] BY
v.        Record No. 0686-12-2            JUDGE LARRY G. ELDER
                                          APRIL 2, 2013

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF LOUISA COUNTY
Timothy K. Sanner, Judge

(Steven Shareff, on brief), for appellant.  Appellant submitting on
brief.

(Kenneth T. Cuccinelli, II, Attorney General; Rosemary V. Bourne,
Assistant Attorney General, on brief), for appellee.


Remone J. Houchens (appellant) appeals his convictions for aggravated malicious

wounding, robbery, and burglary.  He argues (1) the admission of the victim's call to 911 violated

his rights under the Confrontation Clause of the Sixth and Fourteenth Amendments to the United

States Constitution; and (2) the trial court erred in denying his motion for a new trial based on

after-discovered evidence.  We hold that (1) the 911 call was made in response to an ongoing

emergency and was therefore non-testimonial; and (2) the after-discovered evidence would not have

produced a different outcome had it been introduced at trial.  Accordingly, we affirm appellant's

convictions.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I.

BACKGROUND

We consider the evidence in the light most favorable to the Commonwealth, the prevailing party below. See Baldwin v. Commonwealth, 274 Va. 276, 278, 645 S.E.2d 433, 433 (2007). So viewed, the evidence establishes that on May 22, 2010, Lois Rosson, an eighty-seven-year-old widow living alone, was attacked in her residence at approximately 2:40 a.m. The assailant broke into Rosson's residence, dragged her out of bed, and struck her in the head. Rosson attempted to defend herself with her firearm, but the assailant knocked it out of her hand. Rosson was unable to recover the firearm. The assailant left after Rosson screamed and told him that she was going to wake up her husband. As the assailant fled, he broke through the glass front door of Rosson's residence. Rosson immediately called 911 and reported the incident. As a result of her injuries, Rosson suffered permanent vision loss in her left eye.

Over appellant's objection, the trial court ruled that Rosson's statements to the 911 dispatcher were non-testimonial in nature and admitted the redacted audio recording of the 911 call into evidence.[1] At the conclusion of the evidence, the jury found appellant guilty of the instant crimes. Appellant subsequently filed a motion to set aside the verdict based on newly discovered evidence and attached an affidavit implicating a third individual in the crimes. The trial court denied the motion. This appeal followed.

---

[1] The trial court noted a "significant delay" in the recording after which "Rosson appeared to be substantially more under control," and therefore excluded the later portions of the recording. The trial court further ordered the Commonwealth to redact any mention of an attempted rape. The record does not contain the exact audio recording played to the jury, but includes a transcript of the 911 call. The trial court referred to this transcript when considering appellant's motion to suppress. Because the record clearly indicates which portions of the transcript correspond to the audio recording played to the jury, and appellant does not suggest otherwise, we refer to both the transcript and the recording interchangeably.

- 2 -

## II.

## ANALYSIS

## A.

## CONFRONTATION CLAUSE

Appellant argues the Confrontation Clause of the Sixth Amendment precluded admission of the 911 recording. Relying on <u>Crawford v. Washington</u>, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), and its progeny, appellant claims that Rosson's statements to the 911 dispatcher were testimonial in nature and, therefore, inadmissible absent the opportunity to cross-examine Rosson. Appellant contends the original emergency ended when the assailant fled Rosson's residence and, therefore, the 911 call focused on a criminal investigation of a completed event. We disagree.

"[W]e review *de novo* whether a particular category of proffered evidence is 'testimonial hearsay.'" <u>Caison v. Commonwealth</u>, 52 Va. App. 423, 434, 663 S.E.2d 553, 559 (2009) (quoting <u>Jasper v. Commonwealth</u>, 49 Va. App. 749, 755, 644 S.E.2d 406, 409 (2007)).

The Confrontation Clause of the Sixth Amendment requires that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. This provision bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." <u>Crawford</u>, 541 U.S. at 53-54, 124 S. Ct. at 1365, 158 L. Ed. 2d at 194. "[T]he question whether admission of a hearsay statement against a criminal defendant violates the Confrontation Clause turns on whether the statement is 'testimonial' in nature." <u>Caison</u>, 52 Va. App. at 435, 663 S.E.2d at 559 (citation omitted).

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an *ongoing emergency*. They are testimonial when the

- 3 -

circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

Davis v. Washington, 547 U.S. 813, 822, 126 S. Ct. 2266, 2273-74, 165 L. Ed. 2d 224, 237 (2006) (emphasis added).

Because the determination of "whether an emergency exists and is ongoing is a highly context-dependent inquiry," Michigan v. Bryant, __ U.S. __, __, 131 S. Ct. 1143, 1158, 179 L. Ed. 2d 93, 110 (2011), "we objectively evaluate the circumstances in which the encounter occurred and the statements and actions of the parties," id. at ___, 131 S. Ct. at 1156, 179 L. Ed. 2d at 108. Factors pertinent to this determination include:

"(1) Was the declarant speaking about current events as they were actually happening, requiring police assistance rather than describing past events?

(2) Would a reasonable listener conclude that the declarant was facing an ongoing emergency that called for [immediate] help?

(3) Was the nature of what was asked and answered during the course of a 911 call such that, viewed objectively, the elicited statements were necessary to be able to resolve the present emergency rather than simply to learn . . . what had happened in the past?

(4) What was the level of formality of the interview? For example, was the caller frantic, in an environment that was neither tranquil nor safe?"

Wilder v. Commonwealth, 55 Va. App. 579, 590-91, 687 S.E.2d 542, 547 (2010) (quoting United States v. Cadieux, 500 F.3d 37, 41 (1st Cir. 2007)); see Davis, 547 U.S. at 826-27, 126 S. Ct. at 2276-77, 165 L. Ed. 2d at 239-40. Subsequent to Crawford and Davis, the United States Supreme Court has identified additional factors to aid the lower courts in determining whether an ongoing emergency exists: (1) the "circumstances in which an encounter occurs—e.g., at or near the scene of the crime versus at a police station," Bryant, __ U.S. at __, 131 S. Ct. at 1156, 179 L. Ed. 2d at 108; (2) whether the "threat" to the victim, first responders, or the general public has

been "neutralized," id. at __, 131 S. Ct. at 1158, 179 L. Ed. 2d at 111; (3) the "type of weapon employed," id.; and (4) the "medical condition of the victim," insofar as "it sheds light on the ability of the victim to have any purpose at all in responding to police questions" or "provides important context for first responders to judge the existence and magnitude of a continuing threat to the victim, themselves, and the public," id. at __, 131 S. Ct. at 1159, 179 L. Ed. 2d at 111.

Applying these principles to the case at hand, we conclude Rosson's statements to the 911 dispatcher were non-testimonial in nature. The circumstances, viewed objectively, make clear that Rosson faced an ongoing emergency that was manifested by two sources: Rosson's serious injury to her face and the present and proximate danger that appellant, a potentially armed assailant, would return to the scene. See Caison, 52 Va. App. at 436, 663 S.E.2d at 559.

Rosson called 911 immediately after appellant fled her residence. Rather than answer the dispatcher's questions, Rosson, who was bleeding from her head injury, repeatedly requested police assistance because she was "scared to death." Although the dispatcher asked Rosson questions regarding the identity of the assailant, the context of the exchange reveals that the dispatcher was "trying to 'elicit[] statements . . . necessary to be able to resolve the present emergency.'" United States v. Arnold, 486 F.3d 177, 189 (6th Cir. 2007) (quoting Davis, 547 U.S. at 827, 126 S. Ct. at 2276, 165 L Ed. 2d at 240). Indeed, Rosson informed the dispatcher that the assailant was still at large and possibly armed after he knocked Rosson's firearm out of her hand. See United States v. Proctor, 505 F.3d 366, 371-72 (5th Cir. 2007) (holding that the declarant's statements to a 911 operator were not testimonial because his information regarding the defendant's criminal history, drug use, and possession of a firearm were "necessary for the police to respond appropriately to the emergency, as it allowed the police to determine whether they would be encountering a violent felon" (citation omitted)).

We find no merit to appellant's contention that the ongoing emergency ended once the assailant fled Rosson's residence. Rosson, who lived alone, was concerned that her assailant would return and relayed this fear to the dispatcher. She had thwarted her assailant by fabricating the presence of a husband and had no way to know whether her assailant would return. Rosson's severe head injury and frantic responses to the dispatcher support a finding that she was "in an environment that was neither tranquil nor safe." Cadieux, 500 F.3d at 41.

We further reject appellant's claim that Rosson was describing a past event. Rosson called 911 immediately after her assailant fled her residence. The emergency had not ended because the situation also involved a dangerous assailant who had struck an elderly woman without provocation, was potentially armed, and fled into the surrounding neighborhood with no guarantee that he would not return and cause further harm to Rosson. Given Rosson's frantic responses, her statement "was plainly a call for help against a bona fide physical threat." Davis, 547 U.S. at 827, 126 S. Ct. at 2276, 165 L. Ed. 2d at 240; see Arnold, 486 F.3d at 189 (concluding that the "exigency of the moment" had not ended even though the victim left the house where the assailant remained, went around the corner, and called 911). Although the 911 call lasted for several minutes, the trial court identified "a significant delay" in the recording in which "Rosson appeared to be substantially more under control," and therefore ordered the exclusion of those portions of the 911 call where Rosson gave testimonial statements to the dispatcher. See Davis, 547 U.S. at 829, 126 S. Ct. at 2277, 165 L. Ed. 2d at 241 (cautioning trial courts to "redact or exclude the portions of any statement that have become testimonial").

We conclude that because Rosson's statements to the 911 dispatcher were in response to an ongoing emergency, they were not testimonial in nature and their admission did not violate appellant's right to confront the witnesses against him. Accordingly, the trial court did not err in admitting the redacted 911 statements.

B.

AFTER-DISCOVERED EVIDENCE

In his motion to set aside the verdict based on newly discovered evidence, appellant attached an affidavit from Quadre Greene that alleged Damian Kiser implicated himself in the instant crimes. Greene maintained that in his presence, Kiser discussed with appellant breaking into Rosson's residence to steal personal property. Greene further alleged that Kiser later admitted he and appellant broke into a woman's house and appellant cut his hand on the glass. Kiser admitted to Greene that Rosson woke up and Kiser "panicked and didn't know what to do so he attacked her and beat her up." Finally, Kiser claimed that appellant took Rosson's firearm and they both left. The trial court denied the motion and held that Greene's testimony would not produce an opposite result were he called to testify at trial. The trial court characterized the evidence against appellant as "overwhelming" and "well beyond what was necessary to convict."

Appellant argues Greene's affidavit established that a co-assailant assaulted Rosson and that appellant had no intent to rob Rosson when he entered the premises. Appellant contends if a trier of fact credited Greene's testimony as true, it would be compelled to find that appellant did not intend to rob Rosson when he entered her residence and that the assault on Rosson was unforeseen and committed solely by Kiser without any concert of action on appellant's part.

A motion for a new trial based on after-discovered evidence "is a matter submitted to the sound discretion of the circuit court and will be granted only under unusual circumstances after particular care and caution has been given to the evidence presented." Orndorff v. Commonwealth (Orndorff I), 271 Va. 486, 501, 628 S.E.2d 344, 352 (2006). "'The real object to be attained in granting a new trial is to prevent an erroneous judgment from becoming final.'" Indep. Cab Assoc. v. LaTouche, 197 Va. 367, 377, 89 S.E.2d 320, 327 (1955) (quoting Burks Pleading and Practice § 324, at 601-03 (4th ed. 1952)).

A party seeking a new trial must show the evidence at issue:

> (1) appears to have been discovered subsequent to the trial; (2) could not have been secured for use at the trial in the exercise of reasonable diligence by the movant; (3) is not merely cumulative, corroborative or collateral; and (4) is material, and such as should produce opposite results on the merits at another trial.

Odum v. Commonwealth, 225 Va. 123, 130, 301 S.E.2d 145, 149 (1983).  The moving party "must establish each of these mandatory criteria."  Commonwealth v. Tweed, 264 Va. 524, 528, 570 S.E.2d 797, 800 (2002).

"Before setting aside [a] verdict, the trial court must have evidence before it to show in a clear and convincing manner 'as to leave no room for doubt' that the after-discovered evidence, if true[,] would produce a different result at another trial."  Carter v. Commonwealth, 10 Va. App. 507, 513, 393 S.E.2d 639, 642 (1990) (quoting Powell v. Commonwealth, 133 Va. 741, 756, 112 S.E. 657, 661 (1922)).  Furthermore,

> [w]hen . . . the evidence supporting the new trial motion is contradicted by evidence in opposition to the motion, the circuit court is not permitted to presume that the moving party's evidence is true but is *required to weigh all the evidence presented* in determining whether the moving party has satisfied the materiality standard articulated in Odum.  Thus, when a circuit court is presented with conflicting evidence in considering a motion for a new trial, *the court's role resembles that of a fact finder* in determining whether the evidence is such that it *should* produce an opposite result on the merits at a new trial.

Orndorff I, 271 Va. at 504-05, 628 S.E.2d at 354 (emphases added) (citations omitted); see Hopkins v. Commonwealth, 20 Va. App. 242, 250-52, 456 S.E.2d 147, 150-52 (1995) (en banc) (approving the trial court's denial of a new trial motion based on its weighing of conflicting testimony in order to determine whether the new evidence "was . . . such as should produce an opposite result on the merits at a new trial").  In short, if the new evidence is such that it *could*, if believed, produce an opposite result on the merits at a new trial, the trial court must also

- 8 -

determine whether it *should* produce such a result, i.e., whether it is credible. If the trial court finds, per Orndorff I, that the new evidence is not credible, this credibility determination controls, and the trial court must deny the motion for a new trial.

Finally, when the circuit court has applied the proper standard, "the appellate court may not substitute its own judgment of the record, but must defer to the circuit court which had the opportunity to assess the credibility of the witnesses and was in the best position to determine the weight to be accorded the evidence." Orndorff v. Commonwealth (Orndorff II), 279 Va. 597, 605, 691 S.E.2d 177, 181 (2010) (appeal after remand of Orndorff I).

Under these principles, we hold the trial court acted within its discretion in weighing all the evidence and concluding that the information in Greene's post-trial affidavit would not produce a different result in a new trial. To begin, Greene's affidavit does not negate the evidence adduced at trial that implicated only appellant in the crimes. The police retrieved a .22 caliber revolver from Kwan Grooms, who testified that he received it from appellant.[2] Rosson's son identified the firearm as belonging to his mother. The firearm, which contained bloodstains on the trigger, hammer, and cylinder release, was submitted for DNA analysis along with a rug from Rosson's residence, her nightgown, and pieces of bloodstained glass that littered the ground. Appellant could not be eliminated as a contributor to the blood on each of these items. Kiser, however, was eliminated as a contributor. Dr. Sandra Johnson, who treated Rosson at the hospital, testified that the cause of the injuries to her eye was consistent with a strong punch to the head. Special Agent Carlton Johnson, Jr. interviewed appellant six days after the attack and

---

[2] In his interview with the police, appellant maintained at first that he saw no firearm when he entered Rosson's residence, but he later admitted that he took a firearm and hid it outside. Appellant then recanted a portion of this second statement, admitting that he pocketed the firearm and gave it Grooms.

noted appellant's "busted" knuckle.  Finally, Rosson's 911 call, made immediately after the attack, mentioned only one person as having perpetrated the break-in and assault.

Lastly, although the trial court did not explicitly assess Greene's credibility, it clearly understood that it was required to act as the fact-finder when evaluating the new evidence.  The trial court questioned the strength of the affidavit because had Greene been called to the stand to testify, he would immediately have been impeached by other statements he made to the police denying any knowledge of the crimes.  See Hopkins, 20 Va. App. at 251, 456 S.E.2d at 151 (acknowledging that the after-discovered evidence was "self-contradictory, perjured at least in part, and plainly unworthy of belief" and could therefore not legitimately call into question the "uncontradicted, corroborated and reaffirmed eyewitness testimony" that established the defendant's guilt at trial).  Because the "overwhelming" physical evidence implicates only appellant and the trial court implicitly found Greene an untrustworthy witness, the record supports the conclusion that Greene's affidavit was not "such as should produce an opposite result on the merits at another trial."  Odum, 225 Va. at 130, 301 S.E.2d at 149.

### III.

### CONCLUSION

For these reasons, we hold that the trial court did not err in admitting into evidence the 911 call and denying appellant's motion for a new trial.  Accordingly, we affirm appellant's convictions.

Affirmed.