COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Felton, Judges Frank and Huff
Argued at Alexandria, Virginia


STORME GARY SWANN, A/K/A
 HENRY GARY SIMPSON, A/K/A
 GARY SIMPSON

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0562-13-4          CHIEF JUDGE WALTER S. FELTON, JR.
                                                         AUGUST 19, 2014

COMMONWEALTH OF VIRGINIA


               FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                          Louise M. DiMatteo, Judge

          Amy K. Stitzel, Assistant Public Defender (Fikri Ramadan, Assistant
          Public Defender; Office of the Public Defender, on briefs), for
          appellant.

          Robert H. Anderson, III, Senior Assistant Attorney General (Mark R.
          Herring, Attorney General, on brief), for appellee.


        Storme Gary Swann, a/k/a Henry Gary Simpson, a/k/a Gary Simpson ("appellant") appeals

his convictions of robbery, in violation of Code § 18.2-58, abduction with intent to extort money, in

violation of Code § 18.2-48, and statutory burglary, in violation of Code § 18.2-90, following a jury

trial in the Circuit Court of Arlington County ("trial court").  Appellant asserts that the trial court

erred, in violation of the Confrontation Clause, by admitting statements of an anonymous tipster

regarding appellant's purported commission of the charged offenses.  He also asserts the trial court

erred by denying a limiting jury instruction regarding the content of the anonymous tip.  Finally,

appellant contends the trial court erred by denying funds for his expert in eyewitness identification

to testify at trial regarding cross-racial identification.

_____
        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND

Under well-settled principles, we view the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party at trial. Bolden v. Commonwealth, 275 Va. 144, 148, 654 S.E.2d 584, 586 (2008). On the night of August 14, 2010, L.B. and her mother, G.B., were staying together in a first-floor hotel room in Arlington County.[1] An unknown man, identified by the women as an African-American man, forced his way into their room. The man remained in the women's lighted hotel room for approximately one hour. He demanded that both women lie face down on the floor, and covered each woman with a blanket or bedspread. He left after taking personal belongings and over $3,000 in cash from L.B. and G.B.

On the night of the robbery, Officer Ivie of the Arlington County Police Department had been working in an off-duty capacity as a security guard at that hotel. During the course of his patrol that evening, he observed a white Isuzu Rodeo being operated in a suspicious manner in the hotel parking lot. He recorded the temporary Maryland license plate number on that vehicle as 64977M.

Detective Don Fortunato of the Arlington County Police Department was assigned to investigate the robbery of L.B. and G.B. As part of his investigation, he collected and reviewed hotel surveillance video from the night of August 14, 2010. He observed an African-American man in the surveillance video who appeared to match L.B. and G.B.'s description of the individual who robbed them. In October 2010, two and a half months after the robbery, the victims, L.B. and G.B., viewed the hotel surveillance video from August 14, 2010. L.B. identified the person on the surveillance video as the man who robbed her and her mother. G.B. was unable to identify the person in the video as the man who robbed them.

---

[1] L.B. and G.B. had traveled from Canada to visit Washington, DC, and were in the midst of their vacation on August 14, 2010.

After L.B. identified the person in the surveillance video as the man who robbed her and her mother, Detective Fortunato developed four still photographs of the man shown in the video. On November 4, 2010, approximately three months after the robbery of the women, the police department released the photographs from the hotel surveillance video to various regional media outlets, asking members of the public to come forward with any information they might have about the man in the photos and the August 14, 2010 robbery.

Shortly after the release of the still photographs to the public, Detective Fortunato received an anonymous tip from Crime Solvers naming appellant as a possible perpetrator in the robbery of G.B. and L.B.[2] The anonymous tipster told Detective Fortunato that appellant told her "that he had to lay low because of something that he did at an unknown hotel."

After he received the anonymous tip naming appellant as a possible suspect in the August 14, 2010 robbery, Detective Fortunato interviewed appellant's Maryland probation officer, Corey Wimberly ("probation officer").[3] Detective Fortunato showed the probation officer four still photographs taken from the hotel surveillance video, and asked him whether he could identify the man pictured in the photographs. The probation officer identified appellant as the individual pictured in the still photographs from the hotel surveillance video.

On November 22, 2010, after the probation officer identified appellant as the individual pictured in the hotel surveillance video, officers arrested appellant in Charles County, Maryland. On that date, officers in Charles County also executed a search warrant for appellant's vehicle, a

---

[2] Crime Solvers is identified in the record on appeal as an independent organization "that is designed to receive information from the public." Individuals who wish to assist law enforcement officers in their investigation of a case can place anonymous calls to Crime Solvers. A Crime Solvers liaison forwards any information a tipster relays to the detective or detectives leading the police investigation.

[3] Detective Fortunato discovered during his investigation that appellant was on probation and was registered as a sex offender in the State of Maryland.

2002 white Isuzu Rodeo bearing a temporary Maryland tag numbered 64997M.[4]  In a search

incident to appellant's arrest, officers found a cell phone on his person.  Officers later executed a

search warrant on appellant's cell phone.  They recovered several text messages that appellant

sent to acquaintances after law enforcement released the four still photographs from the hotel

surveillance video on November 4, 2010.[5]

At trial on November 13, 2012, both L.B. and G.B. identified appellant as the man who

robbed them the night of August 14, 2010.  The jury subsequently found appellant guilty of two

counts of robbery, two counts of abduction with intent to extort money, and one count of

statutory burglary.[6]

## II.  ANALYSIS

### A.  Confrontation Clause

Appellant asserts that the trial court erred by allowing Detective Fortunato to testify

about the content of the anonymous tip he received from Crime Solvers.  He contends that

---

[4] That vehicle and tag number were identical to that which Officer Ivie observed at the hotel the night of August 14, 2010, except for one transposed digit on the tag number.  Officer Ivie recorded the tag number as 64977M; appellant's vehicle bore the tag number 64997M.

[5] On November 10, 2010, within a week after the surveillance photographs were released to the public, appellant sent a text message to "Bernadette" saying, "I know you haven't heard from me but things are getting bad for me."  On November 15, 2010, appellant sent a message to "Andre" saying, "I am showing [sic] out of town.  I got spooked when I left to take Angie to work because undercover police car was sitting close to her house."  On the same date, appellant also sent a message to Bernadette stating that he was "spooked" after seeing a marked police car sitting on Bernadette's street.  Finally, on November 19, 2010, appellant sent two text messages to Bernadette.  In the first message, appellant asked her to "go on the [i]nternet and check to see if I have a warrant under both my names.  Go to arrest dot org."  The final text message to Bernadette simply said, "Need help."

[6] The trial court sentenced appellant to fifteen years' incarceration for each of his two convictions of robbery, twenty-five years' incarceration for one conviction of abduction with intent to extort money, thirty years' incarceration for the second conviction of abduction with intent to extort money, and ten years' incarceration for appellant's conviction of statutory burglary.  The trial court ordered appellant to serve his sentences consecutively, for a total active sentence of ninety-five years' incarceration.

Detective Fortunato's testimony regarding the content of the anonymous tip was inadmissible hearsay and that the detective's testimony regarding that content violated the Confrontation Clause of the Sixth Amendment of the United States Constitution.

The Confrontation Clause requires that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI. This constitutional provision bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination."  Crawford v. Washington, 541 U.S. 36, 53-54 (2004).

"[W]e review *de novo* whether a particular category of proffered evidence is 'testimonial hearsay.'"  Caison v. Commonwealth, 52 Va. App. 423, 434, 663 S.E.2d 553, 559 (2009) (quoting Jasper v. Commonwealth, 49 Va. App. 749, 755, 644 S.E.2d 406, 409 (2007)).

At a pretrial hearing, the parties stipulated that Detective Fortunato would not testify regarding the content of the Crime Solvers tip he received naming appellant as a possible suspect, except to state that the tip "point[ed] to" or "indicat[ed]" appellant as a suspect in the robbery.

At trial, Detective Fortunato testified on direct examination that he received an anonymous tip from Crime Solvers regarding the August 14, 2010 robbery and assault of L.B. and G.B.  The Commonwealth asked Detective Fortunato whether the Crime Solvers tip implicated a particular person as a suspect in the robbery.  Detective Fortunato responded, "[y]es, it did."  Appellant objected to that question, arguing that Detective Fortunato's testimony was inadmissible hearsay and that his testimony violated appellant's right to confront and cross-examine the anonymous tipster.  The Commonwealth asserted that it was offering the tipster's statement naming appellant as a suspect in the robbery not for its truth, but simply to show what Detective Fortunato did in response to the information he received from the tipster.

The trial court overruled appellant's objection, stating that the Commonwealth could ask Detective Fortunato whether he had received a tip from Crime Solvers, but could not ask whether the tipster identified appellant as the perpetrator of the robbery. The Commonwealth thereafter asked Detective Fortunato whether he had received information from Crime Solvers that caused him to investigate appellant. Detective Fortunato replied affirmatively.

During his cross-examination of Detective Fortunato, appellant elicited evidence that law enforcement officers had received a number of tips in the case. He further asked Detective Fortunato about an anonymous tip that identified "Fred Harold" or "Fred Harolds" as the individual who committed the August 14, 2010 robbery. Detective Fortunato testified that he had received such a tip. However, he further testified that he determined that the man to whom the tipster referred had been "in an area hospital at the time of [the] [robbery]." On cross-examination, appellant asked Detective Fortunato whether he recalled a conversation wherein he admitted he did not know who "Harold" was and that he did not know how to spell "Harold's" last name. Detective Fortunato testified that he did not recall having such a conversation. Appellant also asked Detective Fortunato if he was aware of similar robberies that had been committed in neighboring Fairfax County by a man matching L.B.'s and G.B.'s description of the man who robbed them. In response to appellant's questions, Detective Fortunato stated that he was aware of the Fairfax County robberies, that the suspect in the Fairfax County robberies was an African-American man, and that man had not been in custody the night of August 14, 2010.

On redirect examination, the Commonwealth asked Detective Fortunato about the content of the anonymous Crime Solvers tip implicating appellant as a suspect in the August 14, 2010 robbery of L.B. and G.B. In response to appellant's objection to that question, the Commonwealth argued that appellant "opened the door [during his cross-examination of

Detective Fortunato]. They have asked not only about tips but about the content of tips." In ruling that the Commonwealth could question Detective Fortunato about the content of the anonymous tip from Crime Solvers, the trial court stated:

> The question is whether [appellant] ha[s] opened the door to getting into a little more specific information about the various tips [Detective Fortunato] may have received. Otherwise, it is in isolation and you get to cherry pick what you think is important and the Commonwealth has no ability to explain why this was more perhaps superior, if you will, to the other tips.

> \* \* \* \* \* \* \*

> I think you have opened the door to it by asking about all the various tips. Now we are in a world where some tips are coming in, some tips are not coming in and you have set it up so that the jury . . . is speculating about the value we made of these things and I don't think that is fair.

> \* \* \* \* \* \* \*

> You [appellant] opened the door for him. I think that . . . the problem is you . . . tried to show weaknesses in the Commonwealth's case and now they are not being allowed to rehabilitate by this. So I don't think it is fair so I am going to allow it.

Following the trial court's ruling, Detective Fortunato testified that the anonymous tipster "had a good deal of information about [appellant]. It just wasn't, this [sic] Storme Swann [the appellant] and hang up. This is a lot of information that led to the past and everything along those lines." Detective Fortunato then testified that the tipster stated that appellant "told her that he had to lay low because of something that he did at an unknown hotel."

i.

In <u>Crawford</u>, the Supreme Court held that the Confrontation Clause applies only to exclude *testimonial hearsay statements*. <u>Crawford</u>, 541 U.S. at 51. Testimonial statements include out-of-court statements made by individuals in response to police interrogation where the

- 7 -

"primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." Davis v. Washington, 547 U.S. 813, 822 (2006).

The statements made by the anonymous Crime Solvers tipster to Detective Fortunato, leading to the detective's further investigation of appellant as the perpetrator of the August 14, 2010 robbery, clearly fall within the class of statements considered testimonial. The tipster initially responded to an appeal by law enforcement asking members of the public to provide any information they had regarding a specific robbery that occurred on August 14, 2010. The tipster's statements naming appellant as the perpetrator of the robbery of L.B. and G.B. were made precisely to aid law enforcement in the apprehension and prosecution of the person who committed the August 14, 2010 offense. Accordingly, we conclude that the statements made by the anonymous tipster to Detective Fortunato were testimonial in nature.

We next consider whether Detective Fortunato's testimony concerning the content of the anonymous Crime Solver's tip was hearsay. That is, we consider whether his testimony constituted evidence of an out-of-court statement by a person not present at trial to be cross-examined, and offered to prove the truth of the matter asserted. See Rule 2:801 (hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted").[7] The Commonwealth asserts that Detective Fortunato's testimony, that appellant told the anonymous tipster that "he had to lay low because of something that he did" at a hotel, was not hearsay because his testimony was offered to describe the course of the police investigation, not for the truth of what the anonymous tipster asserted.

The Supreme Court has held that out-of-court statements are not hearsay if offered to explain the reasons for or the propriety of a police investigation. Kyles v. Whitley, 514 U.S. 419,

---

[7] Virginia's Rules of Evidence became effective on July 1, 2012, prior to appellant's trial on November 13, 2012. See 2012 Va. Acts chs. 608, 788.

446 (1995). However, permitting law enforcement officers "to narrate the course of their investigations, and thus spread before juries . . . information that is not subject to cross-examination, would go far toward abrogating [an accused's] rights under the [S]ixth [A]mendment and the hearsay rule." United States v. Silva, 380 F.3d 1018, 1020 (7th Cir. 2004); see also United States v. Maher, 454 F.3d 13, 22 (1st Cir. 2006) ("The [Commonwealth's] articulated justification—that a[] statement by an informant to police which sets context for the police investigation is not offered for the truth of the statement and thus not within Crawford—is impossibly overbroad" and has an "added bite" where it is used in an attempt "to circumvent Crawford's constitutional rule.").

Here, during his cross-examination of Detective Fortunato, appellant placed the propriety of the police investigation, and its focus on him, at issue. Appellant asked the detective whether and how law enforcement responded to other tips or leads in the case. The Commonwealth contends that its subsequent examination of Detective Fortunato, regarding the content of the anonymous Crime Solvers tip, was properly admitted to explain why law enforcement focused its investigation on appellant to the exclusion of all other suspects. However, Detective Fortunato's testimony of the content of the anonymous Crime Solvers tip went beyond describing the course of, and establishing the propriety of, the police investigation. Detective Fortunato's testimony was offered to establish the truth of the tipster's statements--that appellant committed the robbery at the hotel and needed to "lay low" to avoid apprehension by law enforcement. Detective Fortunato's testimony placed before the jury hearsay evidence by the tipster, not subject to cross-examination, directly implicating appellant as the person who assaulted and robbed L.B. and G.B. Accordingly, admission of the anonymous tipster's statement that appellant said he had to "lay low" because of something he did at a hotel violated appellant's constitutional right to confront the witnesses against

him under the Confrontation Clause.[8]  See, e.g., United States v. Holmes, 620 F.3d 836, 842 (2010) (detailed statements read into the record from the search warrant affidavit went well beyond establishing the propriety of the investigation, and were offered to establish their truth--to show that Holmes sold drugs from a particular residence and that he possessed guns while he was at the residence where the guns were found).

ii.

A violation of appellant's Sixth Amendment right to cross-examine the witnesses against him is subject to a harmless error analysis, under which we assess whether the violation was harmless beyond a reasonable doubt.  Angel v. Commonwealth, 281 Va. 248, 264, 704 S.E.2d 386, 395-96 (2011).  The harmless error standard

> requires a determination of "whether there is a reasonable possibility that the evidence complained of might have contributed to the

---

[8] The Commonwealth asserts that appellant "opened the door" to Detective Fortunato's testimony regarding the content of the anonymous Crime Solvers tip by asking the detective on cross-examination about other tips or leads he received in the case.  We disagree with the Commonwealth's assertion.  "The term 'opening the door' is a catchphrase often used to refer to the doctrine of curative admissibility."  Elliott v. Commonwealth, 267 Va. 396, 417, 593 S.E.2d 270, 284 (2004).  "Curative admissibility, in its broadest form, allows a party to introduce otherwise inadmissible evidence," here, Detective Fortunato's testimony regarding the content of the Crime Solvers tip, "when necessary to counter the effect of *improper evidence* previously admitted by the other party."  Id. (emphasis added).  The Commonwealth concedes on appeal that appellant's cross-examination of Detective Fortunato regarding other tips or leads he received in the case was proper to show the course of the police investigation.  See, e.g., Kyles, 514 U.S. at 446.  Because appellant's cross-examination of Detective Fortunato did not result in the admission of improper or inadmissible evidence, the Commonwealth cannot rely on the doctrine of curative admissibility as the basis for its introduction of inadmissible evidence on redirect examination.  See Wright v. Commonwealth, 23 Va. App. 1, 7, 473 S.E.2d 707, 709-10 (1996) (*en banc*).  Moreover, it is well settled that "no principle of law prevents a party from objecting to inadmissible evidence because the party has previously introduced similar, but admissible, evidence."  King v. Commonwealth, 18 Va. App. 57, 60, 441 S.E.2d 704, 705 (1994)  Here, appellant elicited admissible evidence regarding the course and integrity of the police investigation by questioning Detective Fortunato on cross-examination about other tips and leads he received in the case.  He did not "open the door" to the Commonwealth's subsequent introduction of inadmissible, hearsay testimony regarding the content of the anonymous Crime Solvers tip.  Accordingly, the trial court's admission of Detective Fortunato's testimony regarding the content of the Crime Solvers tip, over appellant's objection, was erroneous and constituted a violation of appellant's Confrontation Clause right.

- 10 -

> conviction." In making that determination, the reviewing court is to consider a host of factors, including the importance of the tainted evidence in the prosecution's case, whether that evidence was cumulative, the presence or absence of evidence corroborating or contradicting the tainted evidence on material points, and the overall strength of the prosecution's case.

Lilly v. Commonwealth, 258 Va. 548, 551, 523 S.E.2d 208, 209 (1999) (quoting Chapman v. California, 386 U.S. 18, 23 (1967) (citations omitted)).

Here, the importance of the anonymous tipster's statements to the Commonwealth's case was clear. In closing argument, the Commonwealth told the jury:

> Finally, *and most importantly*, we have two other pieces of evidence. First, Detective Fortunato told you that the tip he received said that the defendant said he had to lay low because of something he did at an unknown hotel. That's a statement of the defendant. You can consider that and you should consider that.

Detective Fortunato's testimony reciting the anonymous tipster's statements to him was not merely cumulative evidence. Cumulative testimony "is repetitive testimony that restates what has been said already and adds nothing to it. It is testimony of the same kind and character as that already given." Massey v. Commonwealth, 230 Va. 436, 442, 337 S.E.2d 754, 758 (1985). Here, the Commonwealth presented evidence tending to establish that appellant was present at the hotel on the night of August 14, 2010, around the time the robbery of L.B. and G.B. was committed. The Commonwealth also presented evidence of text messages appellant sent to acquaintances days after law enforcement released still photographs from the hotel surveillance video to the public, tending to show his guilty knowledge that a warrant had been issued for his arrest. Finally, the Commonwealth produced evidence tending to show that appellant committed the robbery of L.B. and G.B. L.B. identified the man in the surveillance video, a man later identified as appellant, as the man who robbed her, as well as her mother. Although G.B. was unable to identify the man in the surveillance video with any certainty as the man who robbed her, she identified appellant, who was present, at trial as the individual who perpetrated the robbery. However, Detective Fortunato's

- 11 -

testimony, that appellant told the anonymous Crime Solvers tipster that "he had to lay low" because of "something that he did" at a hotel, was unique in that it contained facts not mentioned by any other witness—specifically, an admission by appellant that he committed a crime at a hotel.

From the evidence presented in the record on appeal, we conclude that "'there is a reasonable possibility that the evidence complained of might have contributed to [appellant's] conviction.'" Lilly, 258 Va. at 551, 523 S.E.2d at 209 (quoting Chapman, 386 U.S. at 23). Accordingly, we conclude that the Commonwealth's violation of appellant's Confrontation Clause right was not harmless beyond a reasonable doubt.

### III. CONCLUSION

For the foregoing reasons, we reverse appellant's convictions, concluding that the trial court's ruling permitting Detective Fortunato to testify as to the content of the anonymous tip he received from Crime Solvers was error. We reverse appellant's convictions of robbery, in violation of Code § 18.2-58, abduction with intent to extort money, in violation of Code § 18.2-48, and statutory burglary, in violation of Code § 18.2-90, and remand the case to the trial court for further proceedings consistent with this opinion, if the Commonwealth be so advised.[9]

Reversed and remanded.

---

[9] Because we hold that the trial court erred by admitting Detective Fortunato's testimony regarding the content of the anonymous Crime Solvers tip into evidence, and because we hold that error was not harmless, we need not consider appellant's second assertion of trial court error—that the trial court erred by refusing to give a limiting jury instruction regarding the content of the anonymous Crime Solvers tip. "[A]n appellate court decides cases 'on the best and narrowest ground available.'" Luginbyhl v. Commonwealth, 48 Va. App. 58, 64, 628 S.E.2d 74, 77 (2006) (en banc) (quoting Air Courier Conference v. Am. Postal Workers Union, 498 U.S. 517, 531 (1991) (Stevens, J., concurring)). We also do not address, under the peculiar circumstances of this cross-racial identification case, appellant's third assignment of error—that the trial court erred by refusing to provide funding for appellant's expert in eyewitness identification to testify at trial, even though the trial court granted funding for the expert to prepare a pretrial report on appellant's behalf.